**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RICHEMONT INTERNATIONAL SA; VAN CLEEF & ARPELS, a division of RICHEMONT NORTH AMERICA, INC.; and CARTIER, a division of RICHEMONT NORTH AMERICA, INC.,<br><br>Plaintiffs,<br>v.<br><br>VICTORIA'S JEWELERS, INC., d/b/a VICTORIA JEWELRY.<br><br>Defendant. | Civil Action No. ________________<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiffs Richemont International SA; Van Cleef & Arpels, a division of Richemont North America, Inc.; and Cartier, a division of Richemont North America, Inc. (collectively "Richemont" or "Plaintiffs") for their Complaint against Defendant Victoria's Jewelers, Inc., d/b/a Victoria Jewelry ("Defendant"), alleges as follows:

## <u>SUBSTANCE OF THE ACTION</u>

1. All of the claims asserted herein arise out of and are based on Defendant's repeated, willful, and unlawful manufacture, promotion, distribution, advertising, sale and/or offering for sale of jewelry products that are unlawful imitations of Plaintiffs' federally registered trademarks and trade dresses.

2. Plaintiffs bring claims for trademark and trade dress infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair competition and dilution under Massachusetts law. Plaintiffs seek injunctive and monetary relief and attorneys' fees.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b). Supplemental jurisdiction exists over Plaintiffs' state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over Defendant because (i) Defendant's place of incorporation and principal place of business is in the State of Massachusetts, and/or (ii) Defendant has transacted business in the State of Massachusetts and has contracted to supply or offer to supply goods or services in the State of Massachusetts in connection with matters giving rise to this action.

5. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c), because Defendant is subject to personal jurisdiction in this district due to its transacting of business herein and because a substantial portion of the events at issue have arisen and will arise in this judicial district and Plaintiffs are suffering harm in this judicial district.

**THE PARTIES**

6. Plaintiff Richemont International SA is a société anonyme organized and existing under the laws of Switzerland, having a principal place of business at Route des Biches 10, Villars-sur-Glâne, Switzerland 1752.

7. Plaintiff Van Cleef & Arpels, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 645 Fifth Avenue, New York, New York 10022. Van Cleef & Arpels, a

division of Richemont North America, Inc. is the exclusive distributor of Van Cleef & Arpels products in the United States.

8. Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 645 Fifth Avenue, New York, New York 10022. Cartier, a division of Richemont North America, Inc. is the exclusive distributor of Cartier products in the United States.

9. Upon information and belief, Defendant Victoria's Jewelers, Inc., d/b/a Victoria Jewelry, is a corporation organized and existing under the laws of the State of Massachusetts, having a principal place of business at 333 Washington Street, Suite 203-5B, Boston, Massachusetts 02108.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I. VAN CLEEF & ARPELS

#### A. Richemont's VAN CLEEF & ARPELS Brand and Business

10. Richemont is a world-famous supplier of fine jewelry sold under the VAN CLEEF & ARPELS brand name. Since its inception in France in 1906, Richemont and/or its predecessors-in-interest have been known for manufacturing, producing, distributing, selling and offering for sale innovative, high-quality fine jewelry under the VAN CLEEF & ARPELS brand. Richemont's products appeal to, among others, the luxury goods market and trade and are considered extraordinarily fashionable.

11. Richemont's Van Cleef & Arpels products are sold only in company-owned stores, in authorized specialty retail stores, and in authorized department stores. Richemont currently operates thirty boutiques under the VAN CLEEF & ARPELS name in the United

States, including their popular Boston boutique located at 40 Newbury Street, Boston, Massachusetts 02116, located less than a three-fourths mile walk from Defendant's store.

B. Richemont's Alhambra Collection and Related Intellectual Property Rights

12. One of Richemont's most well-known and sought-after jewelry designs is known as the "Alhambra." Richemont's Alhambra collection was developed in France in the late 1960s and features a quatrefoil motif.

13. To this day, Richemont offers a collection of jewelry based on its first Alhambra design, which is now referred to as the "Vintage Alhambra" collection to distinguish it from later variations on the original design. Examples from the Vintage Alhambra collection are pictured below:





14. Over time, Richemont has introduced several variations of the original Alhambra design. The signature pieces in Richemont's Alhambra jewelry collections incorporate a distinctive quatrefoil design composed of a unique combination of elements that collectively create a particular trade dress that is characteristic of Richemont's Alhambra collections (the "Alhambra Trade Dress"). A close-up of an example of the Alhambra Trade Dress is depicted below:



15. The Alhambra Trade Dress consists of a three-dimensional configuration of a quartrefoil-shaped jewelry ornament in which:

1. the top portion of the quatrefoil piece has an outer edge that is beaded with an inner portion that is flat as well as four larger beads positioned at central points within it;
2. the bottom portion of the quatrefoil piece also has an outer edge that is beaded; and
3. the center portion of the quatrefoil piece is solid and not empty.

16. For decades and continuing through today, Richemont has made widespread and exclusive use of the iconic Alhambra Trade Dress. Richemont has invested a considerable amount of time, effort, and money advertising and promoting their jewelry and watch products bearing the Alhambra Trade Dress and has enjoyed enormous success selling such products in the United States and around the world. Products bearing the Alhambra Trade Dress have

received extensive unsolicited media coverage due to their innovative and distinctive design and their popularity with many high-profile celebrities.

17. By virtue of extensive sales, advertising, and promotion, the Alhambra Trade Dress has become instantly recognizable to the public as exclusively denoting Richemont and signaling the high quality of their products. As such, the Alhambra Trade Dress has obtained secondary meaning and is an enormously valuable asset of Richemont.

18. In addition to Richemont's extensive and strong common law rights in the Alhambra Trade Dress, Richemont owns the following trademark registrations:

| ***Mark*** | ***Reg. No.*** | ***Reg. Date*** | ***Registered Goods*** |
|---|---|---|---|
|  | 4,326,883 | April 30, 2013 | Jewelry |
|  | 4,763,030 | June 30, 2015 | Jewelry; rings; pendants; earrings; necklaces; bracelets |
|  | 4,653,258 | December 9, 2014 | Jewelry |

19. Printouts detailing the registration information for the above marks are attached hereto as <u>Exhibit A</u>. These registrations are all valid, subsisting, and in full force and effect. Moreover, each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Richemont's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

## II. CARTIER

A. The CARTIER Brand and Business

20. Richemont is also a world-famous supplier of fine jewelry and luxury accessories sold under the CARTIER name and brand.

21. Founded in 1847 by Louis-François Cartier, Richemont's Cartier brand has built a reputation for fine craftsmanship in the jewelry field. Through nearly 170 years of use, Richemont has built its CARTIER name and mark to be synonymous with high-quality, well-crafted jewelry. Today, Richemont offers for sale and sells a wide range of products under the CARTIER name and brand, including timepieces, fine jewelry, and accessories. Richemont's commitment to innovation in design and function, as well as the use of only the finest materials, has brought it renown as a leading maker of luxury goods.

22. Among Richemont's most important assets is the intellectual property associated with the CARTIER brand. Among other protection, Richemont owns U.S. trademark registrations covering many of its world-famous marks and innovative jewelry designs.

B. The CARTIER Mark

23. Among the trademarks owned and used by Cartier is the world-famous CARTIER trademark (the "CARTIER Mark"), which has been used continuously in the United States in connection with the advertising and sale of fine jewelry and watches since at least as early as 1859.

24. Cartier has invested significant time, money, and effort to advertise and promote the CARTIER Mark and the products sold thereunder, spending millions of dollars annually on such efforts.

25. The combination of the highest quality products and extensive promotional efforts has kept the CARTIER Mark at the apex of the luxury products industry for decades, and has resulted in millions of dollars of sales year after year.

26. As a result, the CARTIER Mark has acquired enormous value and has become extremely well known to the consuming public and trade as identifying and distinguishing the source of Cartier's products exclusively and uniquely. The CARTIER Mark represents enormous goodwill and has become famous throughout the United States.

27. The CARTIER Mark is the subject of numerous federal trademark registration, including, but not limited to, the following:

| ***Mark*** | ***Reg. No.*** | ***Reg. Date*** | ***Registered Goods*** |
|---|---|---|---|
| CARTIER | 411,239 | January 9, 1945 | *Inter alia*, bracelets, earrings, finger rings |
| CARTIER | 759,202 | October 29, 1963 | *Inter alia*, articles of jewelry for personal wear |
| Cartier | 411,240 | January 9, 1945 | Articles of jewelry for personal wear, namely, *inter alia*, bracelets, earrings, finger rings |
| Cartier | 4,178,047 | July 24, 2012 | *Inter alia*, jewelry |

28. Printouts detailing the registration information for the above marks are attached hereto as Exhibit B. These registrations are all valid, subsisting, and in full force and effect. Moreover, all of the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Cartier's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

C. Richemont's LOVE Collection and Related Intellectual Property Rights

29. One of Richemont's most well-known and sought-after jewelry lines of the Cartier brand is known as the LOVE collection, which consists of a wide variety of jewelry products, each with the distinctive appearance of a flat metal band in white gold, yellow gold, or pink gold punctuated by simulated screw head designs and/or diamonds (the "LOVE Trade Dress"), as shown below:




30. The first item in the LOVE collection was the LOVE bracelet, designed for Cartier by Aldo Cipullo in 1969.

31. Since its introduction, the LOVE bracelet has adorned the wrists of many famous celebrities, including 1970s couples such as Elizabeth Taylor and Richard Burton, Nancy and Frank Sinatra, Cary Grant and Dyan Cannon, and Ali McGraw and Steve McQueen. Today, the LOVE bracelet continues to be favored by celebrities such as Kylie Jenner

32. In addition to the LOVE bracelet, Richemont manufactures, promotes, and sells a number of jewelry designs within the LOVE collection and incorporating the LOVE Trade Dress, including, but not limited to, earrings, rings, and necklaces.

33. The LOVE Trade Dress is the subject of various federal trademark registrations owned by Richemont, including the following:

| ***Mark*** | ***Reg. No.*** | ***Reg. Date*** | ***Registered Goods*** |
|---|---|---|---|
|  | 1,372,423 | November 26, 1985 | Bracelets |
|  | 3,162,410 | October 24, 2006 | Jewelry, namely, *inter alia*, bracelets, rings, earrings |
|  | 3,776,794 | April 20, 2010 | Jewelry, namely, *inter alia*, rings, bracelets, earrings, made of precious metals |

34. Printouts detailing the registration information for the above marks are attached hereto as Exhibit C. These registrations are all valid, subsisting, and in full force and effect. Moreover, all of the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Richemont's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

35. Richemont has extensively advertised and promoted the products manufactured, sold, and offered for sale under the LOVE Trade Dress both to the trade and to the public. The LOVE Trade Dress immediately indicates Richemont as the exclusive source of products to which they are affixed, and signifies goodwill of incalculable value.

36. Richemont's products sold under the LOVE Trade Dress are available throughout the United States, both through Richemont's own boutiques and in additional authorized retail stores. Richemont sells millions of dollars of products under the LOVE Trade Dress each year.

37. The products distributed by Richemont under the LOVE Trade Dress are of the highest quality and are subject to exacting quality control standards. Richemont takes pains to

ensure the quality of its products by monitoring their production and distribution. As a result of these efforts, Richemont has developed a reputation for providing the highest-quality products under the LOVE Trade Dress and consumers have come to expect that products bearing the LOVE Trade Dress are of the highest quality and workmanship.

38. As a result of Richemont's significant investment of time, money, and effort promoting the LOVE Trade Dress and its widespread sales, the LOVE Trade Dress has acquired enormous value and have become extremely well known to the consuming public and trade as identifying and distinguishing the source of Richemont's products exclusively and uniquely. As a result, the LOVE Trade Dress has come to represent enormous goodwill.

D. Richemont's Juste un Clou Collection and Related Intellectual Property Rights

39. Another of Richemont's most critically acclaimed lines is its Juste un Clou collection, which today comprises bracelets, rings, necklaces, and earrings featuring a circular design in the shape of a nail.

40. The first item in the Juste un Clou collection was a bracelet designed by Aldo Cipullo, which was introduced in 1971 and offered for sale for a short period of time thereafter. In the spring of 2012, the Juste un Clou collection was re-launched, this time comprising both bracelets and other jewelry. Examples of the Juste un Clou Works are shown below:





41. The bracelets in Richemont's Juste un Clou collection incorporate a distinctive design composed of a unique combination of elements that collectively create a particular trade dress that is characteristic of Richemont's Juste un Clou collection (the "Juste un Clou Trade Dress").

42. The Juste un Clou Trade Dress consists of a nail design that:

- has a perfectly round head;
- has a tubular body;
- has grooves on the tubular body underneath the head;
- ends in a point that is preceded by flat surfaces; and
- curves in a circular formation with a slight overlap of the nail's head and point.

43. The Juste un Clou Trade Dress is also the subject of the following federal trademark registration owned by Richemont:

| ***Mark*** | ***Reg. No.*** | ***Reg. Date*** | ***Registered Goods*** |
|---|---|---|---|
|  | 5,583,979 | October 16, 2018 | Jewelry |

44. A printout detailing the information for the Juste un Clou registration is attached hereto as Exhibit C. This registration is valid, subsisting, and in full force and effect. Moreover, the Juste un Clou registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Richemont's exclusive right to use the mark in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

45. Richemont has made widespread and exclusive use of the iconic Juste un Clou Trade Dress. Richemont has invested a considerable amount of time, effort, and money advertising and promoting its jewelry products bearing the Juste un Clou Trade Dress and has enjoyed enormous success selling such products in the United States and around the world. Products bearing the Juste un Clou Trade Dress have received extensive unsolicited media coverage due to their innovative and distinctive design.

46. By virtue of extensive sales, advertising, and promotion, the Juste un Clou Trade Dress has become instantly recognizable to the public as exclusively denoting Cartier and signaling the high quality of its products. As such, the Juste un Clou Trade Dress has obtained secondary meaning and is an enormously valuable asset of Richemont.

## II. DEFENDANT'S UNLAWFUL ACTIVITIES

47. On information and belief, Defendant is in the business of offering for sale and selling jewelry products. Defendant operates a jewelry store in Boston, Massachusetts.

48. On information and belief, Defendant has manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported earrings, necklaces, bracelets, rings and/or other

jewelry pieces bearing imitations of the Alhambra Trade Dress, the LOVE Trade Dress, and the Juste un Clou Trade Dress, all of which were not manufactured, authorized, or approved by Plaintiffs, and certain of these products also feature the CARTIER Mark (collectively, the "Infringing Products").

49. On information and belief, Defendant has offered for sale and sold Infringing Products at its previous store location at 43 Temple Place, Boston, Massachusetts 02111, and continues to offer for sale and sell the Infringing Products at its current location at 333 Washington Street, Suite 203-5B, Boston, Massachusetts 02108. On information and belief, Defendant also advertises its new address as 24 Province Street, Unit 203-5B, Floor 2, Boston, Massachusetts 02108, which is the same address as 333 Washington Street, Suite 203-5B, Boston, Massachusetts 02108.

50. On information and belief, Defendant also markets, promotes, offers for sale, and/or sells jewelry the Infringing Products on its Instagram page at https://www.instagram.com/victoriajewelry/?hl=en and the Instagram page of Nate Youshaoi at https://www.instagram.com/natethejeweler_/?hl=en.

51. In or around April 2024, Plaintiffs' agent observed hundreds of items bearing imitations of the Alhambra Trade Dress, the LOVE Trade Dress, and the Juste un Clou Trade Dress, and also bearing the CARTIER Mark, being sold by Defendant at its previous store location at 43 Temple Place, Boston, Massachusetts 02111. The Infringing Products being offered by Defendant included rings, earrings, bracelets, and necklaces, and were priced between approximately $250 to over $1,000. An employee of Defendant referred to certain Infringing Products as "Cartier style," and certain of these products, including some bracelets, featured the CARTIER Mark.

52. Below are images of the Infringing Products that Plaintiffs' agent observed in April 2024.










04/16/2024






04




53. In December 2024, Plaintiff sent a cease-and-desist letter to Defendant by FedEx and FedEx at Defendant's previous store address in Boston, Massachusetts. Defendant never responded to Plaintiff's December 2024 letter.

54. In February 2025, Plaintiffs' agent again observed over one hundred items bearing imitations of the Alhambra Trade Dress, the LOVE Trade Dress, and the Juste un Clou Trade Dress, being sold by Defendant at its previous store location at 43 Temple Place, Boston, Massachusetts 02111. The Infringing Products being offered by Defendant included rings, earrings, bracelets, and necklaces, and were priced between several hundred dollars to over $1,000.

55. Below are images of the Infringing Products that Plaintiffs' agent observed in February 2025.


















56. Plaintiffs' agent purchased the below pair of earrings for $300, which came with packaging and a receipt bearing the name of Defendant's store, as shown below. Plaintiffs examined the purchased item and determined that it is counterfeit.











57. In April 2025, Plaintiff hand-delivered a cease-and-desist letter to Defendant at Defendant's previous store address in Boston, Massachusetts. Defendant never responded to Plaintiff's April 2025 letter.

58. In July 2025, Plaintiffs' agent no longer observed any items bearing imitations of the Alhambra Trade Dress, but again observed dozens of items bearing imitations of the LOVE

Trade Dress and the Juste un Clou Trade Dress being sold by Defendant at its previous store location at 43 Temple Place, Boston, Massachusetts 02111. The Infringing Products being offered by Defendant included rings and bracelets, and were priced between approximately several hundred dollars to over $1,000. Certain of these products, including some rings, featured the CARTIER Mark.

59. Below are images of the Infringing Products that Plaintiffs' agent observed in July 2025.














60. In October 2025 and February 2026, Plaintiffs' sent additional cease-and-desist letters to Defendant by FedEx at Defendant's previous store address in Boston, Massachusetts. Defendant never responded to Plaintiffs' October 2025 and February 2026 letters.

61. On information and belief, in or around April 2026, Defendant moved its store to a new location at 333 Washington Street, Suite 203-5B, Boston, Massachusetts 02108.

62. In June 2026, Plaintiffs' agent observed over one hundred items bearing imitations of the Alhambra Trade Dress, the LOVE Trade Dress, and the Juste un Clou Trade Dress, being sold by Defendant at its current store location at 333 Washington Street, Suite 203-5B, Boston, Massachusetts 02108. The Infringing Products being offered by Defendant included rings, bracelets, and necklaces, and were priced between approximately several hundred dollars to over $1,000. Certain of these products, including some rings, featured the CARTIER Mark.

63. Below are images of the Infringing Products that Plaintiffs' agent observed in June 2026.














© Cartier

64. In July 2026, Plaintiffs' agent purchased the below ring bearing the CARTIER Mark and the LOVE Trade Dress for $720, and it came with packaging bearing the name of Defendant's store, as shown below. Plaintiffs examined the purchased item and determined that it is counterfeit.





65. Defendant continues to sell Infringing Products on its Instagram account, such as the items in the post at https://www.instagram.com/victoriajewelry/reel/DFa2CNuPaC3/, as shown below:




66. Upon information and belief, Defendant knows, and at all relevant times knew or should have known, that the products it is/was selling and/or distributing are or were unlawful imitations of Plaintiffs' jewelry products, and Defendant advertises them as such by, for example, referring to certain products as "Cartier style." Defendant has been repeatedly warned in writing of its infringing activities, and has persisted with its unlawful behavior nevertheless.

67. On information and belief, Defendant has sold jewelry pieces that bear imitations of Plaintiffs' marks and trade dresses to customers other than Plaintiffs' agent.

68. Defendant is not related to or affiliated with Plaintiffs in any way. Defendant has not sought or at any time received a license or authorization from Plaintiffs for any purpose whatsoever, including for the acts described herein.

69. Defendant's counterfeit and infringing jewelry products directly compete with Plaintiffs' products.

70. Defendant's sale of counterfeit and infringing jewelry products unlawfully wrests from Plaintiffs' control over their reputation and, upon information and belief, is unjustly enriching Defendant.

71. Upon information and belief, Defendant's activity described herein is intentionally fraudulent, malicious, willful, and wanton.

72. Defendant's unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiffs and their business and goodwill unless restrained by this Court.

**FIRST CLAIM FOR RELIEF:**
**TRADEMARK COUNTERFEITING AND INFRINGEMENT OF REGISTERED TRADEMARK AND TRADE DRESS IN VIOLATION OF 15 U.S.C. § 1114(1)**

73. Plaintiffs repeat and incorporates herein by reference each of the foregoing allegations.

74. The Alhambra Trade Dress, LOVE Trade Dress, and the Juste un Clou Trade Dress are used in commerce, are non-functional, are inherently distinctive, and have acquired secondary meaning as the indicator of Plaintiffs as the exclusive source of products containing or incorporating such designs.

75. The CARTIER Mark is distinctive and of incalculable value, and is associated in the public mind with Plaintiffs' goods and services of the highest quality.

76. Defendant has adopted the Alhambra Trade Dress, LOVE Trade Dress, and the Juste un Clou Trade Dress and has, without Plaintiffs' authorization or consent, manufactured, exported, imported, displayed, advertised, reproduced, distributed, offered for sale, and/or sold jewelry designs that contain or incorporate the trade dress in the Alhambra jewelry collection that is the subject of U.S. Registration No. 4,326,883; the trade dress in the quatrefoil-shaped jewelry design of the Alhambra jewelry collection that is the subject of U.S. Registration Nos 4,763,030; the chain link with repeated quatrefoil pieces jewelry design of the Alhambra jewelry collection that is the subject of 4,653,258; the CARTIER word mark, U.S. Registration No. 411,239; the CARTIER word mark U.S. Registration No. 759,202; the stylized CARTIER word mark, U.S. Registration No. 411,240; the stylized CARTIER word mark, U.S. Registration No. 4,178,047; the trade dress in the LOVE bracelet that is the subject of U.S. Registration No. 1,372,423; the trade dress in the screw head design of the LOVE jewelry collection that is the subject of U.S. Registration No. 3,162,410; the trade dress in the LOVE jewelry collection that is the subject of U.S. Registration No. 3,776,794; and the trade dress in the Juste un Clou jewelry collection that is the subject of U.S. Registration No. 5,583,979; or marks or designs that are confusingly similar thereto.

77. Upon information and belief, by virtue of Plaintiffs' extensive and ongoing use and advertising of the above marks and trade dress, Defendant was on actual notice of Plaintiffs' exclusive rights in such marks and trade dress from the outset. In addition, Plaintiffs repeatedly warned Defendant of its unlawful activities.

78. Defendant's manufacturing, exporting, importing, displaying, advertising, reproducing, distributing, offering for sale, and/or sale of infringing Van Cleef & Arpels products bearing the Alhambra Trade Dress and of infringing Cartier products bearing the

CARTIER Mark, LOVE Trade Dress, and/or the Juste un Clou Trade Dress are likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's goods. As a result of Defendant's unauthorized use of Plaintiffs' federally registered trademarks and trade dress, and/or trademarks and trade dress that are identical or highly similar to Plaintiffs' federally registered trademarks and trade dress, the public is likely to believe that Defendant's goods have been manufactured and/or approved by Plaintiffs. Such use falsely represents Defendant as being legitimately connected with and/or authorized by Plaintiffs, and places beyond Plaintiffs' control their own reputation and ability to control the use of their marks and trade dress and the quality of the products bearing those marks and trade dress.

79. Upon information and believe, Defendant's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

80. Defendant's aforesaid conduct violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

81. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)**

82. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

83. The Alhambra Trade Dress, the LOVE Trade Dress, and the Juste un Clou Trade Dress are used in commerce, are non-functional, are inherently distinctive, and have acquired secondary meaning as the indicator of Plaintiffs as the exclusive source of products containing or incorporating such design.

84. The CARTIER Mark is distinctive and of incalculable value, and is associated in the public mind with Plaintiffs and goods and services of the highest quality.

85. Defendant has adopted the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress and has, without Plaintiffs' authorization or consent, manufactured, exported, imported, displayed, advertised, reproduced, distributed, offered for sale, and/or sold jewelry designs that contain or incorporate the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress, or marks or designs that are confusingly similar thereto.

86. Defendant's conduct is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection, or association between Defendant and Plaintiffs, and/or as to Plaintiffs' sponsorship or approval of Defendant's goods, services, and/or commercial activities.

87. As a result of the foregoing, Defendant has falsely designated the origin of its products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88. Upon information and belief, Defendant's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

89. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF: DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)

90. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

91. The CARTIER Mark is a distinctive, federally registered trademark. As a result of Plaintiffs' extensive and exclusive use of the CARTIER Mark in connection with their products,

the CARTIER Mark has become famous and is widely recognized among the consuming public as a designation of source of Plaintiffs' goods. The CARTIER Mark became famous long before Defendant's infringing activities commenced.

92. Defendant's commercial use of marks identical to the CARTIER Mark for goods that are not manufactured or controlled by, affiliated with, or sponsored by Plaintiffs has diluted and is continuing to dilute the distinctive quality of the CARTIER Mark by lessening the capacity of those marks to exclusively identify and distinguish Plaintiffs and their goods, and by tarnishing them through association with Defendant's goods, which are of poor quality and workmanship.

93. Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of the CARTIER Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

94. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**STATUTORY TRADEMARK INFRINGEMENT IN**
**VIOLATION OF MASS. GEN. L. C. 110H §§ 11-14, 16**

95. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

96. Defendant's acts set out above constitute trademark infringement in violation of Mass. Gen. L. C. 110H §§ 11-14, 16, Defendant offered for sale and sold products that reproduce or copy Plaintiffs' Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress – for which Plaintiffs own valid trademark registrations and have used, offered for sale, and/or sold in the state of Massachusetts – without Plaintiffs' consent, and

such conduct likely to cause confusion, mistake, and/or deception among consumers in Massachusetts, all to the irreparable injury of Plaintiffs and the goodwill they have developed in the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress in Massachusetts.

97. By reason of Defendant's infringing activities, Defendant has damaged and caused irreparable harm to Plaintiffs and, unless restrained, will continue to damage and cause irreparable injury to Plaintiffs' goodwill and reputation in the state of Massachusetts.

98. Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress in the state of Massachusetts. Defendant is and was at all relevant times both actually and constructively aware of Plaintiffs' prior use and ownership of the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress, and Defendant's conduct is therefore also willful and intentional.

99. Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Plaintiffs as a result of its wrongful conduct.

100. Defendant's acts have injured and will continue to injure Plaintiffs by, among other things, siphoning customers, diluting Plaintiffs' distinctive marks, confusing customers, and injuring Plaintiffs' reputation.

101. Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF:
STATUTORY TRADEMARK DILUTION IN
VIOLATION OF MASS. GEN. L. C. 110H § 16**

102. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

103. Defendant's acts set out above are likely to dilute the distinctive quality of Plaintiffs' Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress, in violation of Mass. Gen. L. C. 110H § 16.

104. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF:
COMMON LAW UNFAIR COMPETITION**

105. Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

106. Defendant has injured Plaintiffs by depriving them of sales of their genuine goods, by injuring their business reputation, and by passing off Defendant's goods as Plaintiffs' genuine products. Defendant's conduct is likely to confuse a prospective buyer or customer in Massachusetts exercising ordinary caution in his dealings as to the origin, source, or sponsorship of Defendant's products, or to cause mistake or to deceive the public into believing that Defendant's goods originate with or are otherwise authorized by Plaintiffs.

107. On information and belief, Defendant's unauthorized use of the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress is with full knowledge of Plaintiffs' prior use of that trade dress in the United States and in Massachusetts, with full knowledge of the substantial reputation and goodwill associated with

Plaintiffs and the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress amongst consumers in Massachusetts and with full knowledge that Defendant has no license or authority to use the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and/or the Juste un Clou Trade Dress. By appropriating the enormous goodwill of the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress, Defendant unjustly enriches itself and damages Plaintiffs.

108. Defendant's conduct constitutes unfair competition with Plaintiffs under the common law of Massachusetts.

109. Defendant's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1. Permanently enjoining and restraining Defendant, its agents, servants, employees, successors, and assigns and all those in active concert or participation with them, from:

(a) Imitating, copying, or making unauthorized use of the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress, including, without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, or exporting any products bearing the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, the Juste un Clou Trade Dress, or any other confusingly similar mark or design in, on or through any medium, venue, outlet, store, factory, building, website, social media, blog, or other facility or establishment;

(b) Using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendant is associated

with Plaintiffs or that any product manufactured, distributed, displayed, advertised, promoted, offered for sale, sold, imported, or exported by Defendant is in any manner associated or connected with Plaintiffs, is a genuine product of Plaintiffs, or is authorized, licensed, sponsored, or otherwise approved by Plaintiffs;

(c) Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Alhambra Trade Dress, the CARTIER Mark, the LOVE Trade Dress, and the Juste un Clou Trade Dress;

(d) Engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks, trade dresses, or trade names; and

(e) Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)-(d) above, inclusive.

2. Directing that Defendant turn over to Plaintiffs for impoundment and eventual destruction, without compensation to Defendant, all materials in its custody, possession or control that violate the provisions of paragraphs 1(a)-(b) above, along with all articles by means of which such unauthorized copies may be reproduced.

3. Directing that Defendant, at its own expense, recall from any distributors, retailers, vendors, or others to whom it has distributed materials that violate the provisions of paragraph 1(a)-(b) above, and that Defendant deliver up to Plaintiffs for destruction all materials returned to it.

4. Directing that Defendant, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

5. Awarding Plaintiffs all damages sustained as a result of Defendant's unlawful conduct described above pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 284, and that such sums be trebled pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 284.

6. Awarding Plaintiffs all the gains, profits, saving, and advantages realized by Defendant from its conduct described above pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 289.

7. Granting Plaintiffs punitive damages.

8. If Plaintiffs elect, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as provided by 15 U.S.C. §§ 1117(b) & (c).

9. Granting Plaintiffs their full costs, including, as part of such costs, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 285.

10. Granting Plaintiffs both pre-judgment and post-judgment interest on each and every monetary award.

11. Granting Plaintiffs such other and further relief as the Court may consider equitable, just, and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 27, 2026

By: /s/ *Alexander Furey*

Alexander Furey, BBO #634157
CONSIDINE & FUREY, LLP
One Beacon Street, 22nd Floor
Boston, Massachusetts 02108
Phone: (617) 723-7200
Fax: (617) 723-5700
Email: *afurey@considinefurey.com*

John P. Margiotta (pro hac vice forthcoming)
Parker C. Eudy (pro hac vice forthcoming)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Fax: (212) 813-5901
Email: *jmargiotta@fzlz.com*; *peudy@fzlz.com*

*Attorneys for Plaintiffs Richemont International SA; Van Cleef & Arpels, a division of Richemont North America, Inc.; and Cartier, a division of Richemont North America, Inc.*